# Swift & Co. v. Eastern Warehouse Co.

### Action for Damages against Warehousemen.

1. *Damages recoverable against warehouseman, for delay in shipping cotton* —In an action against warehousemen, to recover damages resulting from their failure to ship cotton when ordered, neither the fact that the plaintiff would have been compelled, by the defendants' failure to ship one bale as ordered, to pay one day's additional insurance on one hundred bales, of which it was a part, nor the fact that he was compelled to pay interest for one additional day on the money borrowed from the bank to pay for the one hundred bales, is an element of recoverable damages, when not communicated to the defendants, or known by them.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by John F. Swift & Co., against the Eastern Warehouse Company, to recover damages for the defendant's alleged failure to "ship seventeen bales of cotton when ordered to do so by plaintiffs;" and was commenced in a justice's court, on the 11th September, 1888. On the trial in the Circuit Court, a bill of exceptions was reserved by the plaintiffs, in which the facts are thus stated: "The plaintiffs' evidence tended to show that the defendant was engaged in keeping a warehouse in the city of Troy for the storage of cotton, and as such had seventeen bales of cotton stored by plaintiffs; that it was defendant's duty, as part of said warehouse business, to send out cotton from the warehouse to the railroad depot, and there deliver it, so that the owner could ship it by railroad to his purchasers in other markets; that this was done on the order of the owner, and it was the duty of the warehouse to deliver it at the depot on the day the order was given for its delivery there; that on the 10th September, 1888, plaintiffs ordered defendant to send out said seventeen bales; and that defendant sent out sixteen bales, but overlooked one bale. The evidence tended to show, also, that the owners of cotton, in shipping to buyers, have to do so in round lots of fifty or one hundred bales; that this particular cotton was a shipment of a lot of one hundred bales, seventeen of which were in defendant's warehouse, and the others in the different

warehouses of the city; that by reason of defendant's fail-
ure to send out this one bale of cotton, plaintiffs could only
get a bill of lading for ninety-nine bales, which their con-
signees would not receive, and the shipment of plaintiffs'
said lot of cotton was thereby delayed one day, which, if
plaintiffs desired it covered by insurance, required them to
insure the entire lot of cotton for one day more, at a cost of
about eight dollars, or let it go uninsured for one day, as the
insurance expired on the day the cotton should have been sent
out to the depot. The evidence tended to show also, that the
bank loaned money to buyers to buy cotton, at the rate of
ten per cent., and the interest stopped on a deposit of a
bill of lading; that plaintiffs, by reason of the delay in this
shipment, had to pay interest to the bank for one more day
on the money borrowed by him to buy said cotton. The
rule was for the warehouse to send the cotton on its drays
to the depot, and there place it on the platform; the depot
agent gave receipts to the drayman for the cotton thus sent,
which receipts were called 'dray receipts'; and this was all
the warehousemen had to do towards the shipment, having
no further control over the cotton; and this was all they had
to do when an order was given them; but the cotton was to
be thus sent to the depot on the day the owner ordered it
to be sent. Defendant had received the dray tickets for the
sixteen bales, and offered them to the plaintiffs about dark;
but plaintiffs refused to have anything to do with them,
and notified defendant that it would be held responsible.
The failure to send out the seventeenth bale was an omis-
sion on the defendant's part, and was not intentional. This
being all the evidence, the court charged the jury, on re-
quest, that they must find for the defendant, if they believed
the evidence." The plaintiffs excepted to this charge, and
they here assign it as error.

GARDNER & WILEY, for appellants.

PARKS & SON, *contra.*

STONE, C. J.—When damages are, and when they are
not, too remote to be the subject of recovery, is not always
easy of determination. The decisions of this court are,
that such damages as naturally result from the breach,
according to the usual course of things, or such as naturally
suggest themselves as likely to result from the breach, are

proximate, and may be recovered; while those which result abnormally, not naturally, from some outside, exceptional fact or circumstance, can not be a ground of recovery, unless such fact or circumstance be communicated, and thus become an element of the agreement. This is our rendering of the phrase, so often met with in the books, that only such damages are recoverable as were had in contemplation by the parties as the result of the breach.—*Daughtry v. Amer. Union Tel. Co.*, 75 Ala. 168; *Western Union Tel Co. v. Way*, 83 Ala. 542; *Lehman v. Pritchett*, 84 Ala. 512.

There was no attempt to prove actual damage or injury in this case, except what is stated below. The proof was, that the shipment was delayed one day, on account of the neglect or oversight of the warehouse company, and that if the owners desired the cotton covered by insurance, it would have required them to insure the entire lot (100 bales) for one additional day, at a cost of eight dollars. The insurance expired on the day on which the cotton was ordered to be delivered; but there was no proof that insurance had been taken out for the additional day. It was also proved that cotton-buyers borrow money from banks at a high rate of interest, with which to purchase cotton; that the interest stops on deposit of the bill of lading with the bank; and that in consequence of the defendant's failure to deliver, plaintiffs had to pay interest for one more day.

These were the two elements of damage relied on for recovery, and there was no attempt to prove that the warehouse company was notified of either of these alleged facts.

The damages claimed were not the natural result of the breach, and hence did not furnish a good cause of action.

Affirmed.