# Southern Railway Company *v.* Lewis.

*Delay in Delivery of Goods.*

(Decided Jan. 20, 1910. Rehearing denied Feb. 26, 1910.
51 South. 863.)

1. *Shipping; Demurrage.*—Demurrage, strictly speaking, is a sum due by express contract for the detention of a vessel in loading and unloading beyond the time allowed for such purpose in the contract of affreightment, and it may also apply to the improper detention or delay of a vessel.

2. *Damages; Contract; Measure.*—A party to a contract may on the breach thereof recover such damages as fairly arise naturally from the breach. or such as may be reasonably supposed to have been in the contemplation of the parties at the time of the making of the contract as the probable result of the breach.

3. *Carriers; Goods; Delay in Delivery; Damages.*—Where a carrier undertook to deliver lumber to a vessel and knew at the time of making the contract that the party for whom they undertook to. make the delivery would be compelled to pay demurrage if the cargo was delayed, and delayed delivery for an unreasonable time, thereby forcing the other party to the contract to pay or become liable to pay demurrage, the carrier was liable for the amount of the demurrage.

[Southern Railway Company v. Lewis.]

4. *Same; Evidence.*—Where the complaint alleged that plaintiff had a contract to deliver lumber to a vessel within her lay-days and by which he was required to pay demurrage incurred in furnishing the cargo, and the action was against the carrier for an unreasonable delay in the delivery of the lumber to be furnished by plaintiff to a third person under a contract requiring delivery to a vessel under charter party which stipulated for demurrage, it was competent for the plaintiff to testify that he had such a contract as tending to show that such demurrage charges proximately resulted from the carrier's delay in delivery.

5. *Same; Issue.*—It was competent to show that all charter parties made provision for demurrage as tending to show the carrier's knowledge of same, where the action was against a carrier for delay in delivering lumber to a vessel rendering, the plaintiff liable to demurrage charges, the issue being whether the carrier had notice that the charter party rendered plaintiff liable for demurrage.

6. *Same; Damages.*—Where the carrier undertook, after the arrival of the lumber at point of destination, to deliver the lumber to a vessel with knowledge that a delay in delivery would incur liability for demurrage, the fact that the carrier did not know when contracting for the transportation of the lumber that demurrage charges would accrue if there was delay, did not relieve it from liability, for the demurrage charges.

7. *Same; Special Damages.*—While a carrier is not liable for special damages for delay unless it knew at the time of the making of the contract of the special circumstances requiring prompt shipment, yet, where notice is given of circumstances which will occasion special damages after the contract to carry has been performed, and after the goods has arrived for the delivery, it is liable for such special damages where it negligently failed to make such delivery.

8. *Trial; Reception of Evidence; Objections.*—In the absence of specific objections that a contract referred to was in writing, one party may testify that he has a particular contract with another.

9. *Appeal and Error; Harmless Error; Evidence.*—Where it was shown by the evidence that all vessels at that port were under similar charter parties, and it appeared that the charter party stipulated for demurrage and that the carrier knew of it before undertaking to deliver the freight, any error in admitting the charter party in evidence, or in admitting in evidence the fact that all charter parties contain such provisions, was harmless.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by James A. Lewis against the Southern Railway for damages for delay in delivery of freight. Judgment for plaintiff and defendant appeals. Affirmed.

BESTOR, BESTOR & YOUNG, for appellant.—The contract of shipment was a single contract covering the en-

[Southern Railway Company v. Lewis.]

tire movement from Fairford, Alabama, to a point alongside of the vessel Carrie A. Norton, lying at the docks of the M. J. & K. C. Railway, and the custom or usage of delivery became a part and parcel of the original contract of shipment by adding a new term or condition thereto, determining and fixing the respective rights of the carrier and consignee as to the place, time and method of delivery.—*Melborn v. L. & N.*, 88 Ala. 448; *A. & T. R. R. Co. v. Kidd*, 29 Ala. 226; *Barlow v. Lambert*, 28 Ala. 708; *M. & M. R. R. Co. v. Cobb*, 73 Ala. 401; 12 Cyc. 1082; 6 Cyc. 465; 11 Biss. 49; *Stone v. Rice*, 58 Ala. 95. There having been no notice to the defendant at the time the lumber in question was delivered for shipment of any special circumstances, from which special damages would result in case of breach, such damages could not be recovered, but only such damages as were reasonably within the contemplation of the parties at the time the contract was made.—2 Mayf. 1035; 13 Cyc. 32; Hutchinson on Carriers, 1367. The demurrage charges, therefore, due and paid to the schooner by plaintiff under his collateral contract with the Haviland Lumber Company, were not properly chargeable against the defendant as an element of damage.—*Am. Ex. Co. v. Jennings*, 38 South. 374; *Bradley v. Chicago R. R. Co.*, 94 Wis. 44; *Gulf Ry. Co. v. Gilbert*, 23 S. W. 320; *Missouri Ry. Co. v. Belser*, 35 S. W. 6; *Ill. Cent. v. Johnson*, 94 S. W. 600; *Harvey v. Conn. Ry. Co.*, 124 Mass. 421; *Hooks Co. v. Planters Co.*, 79 S. W. 1094.

GREGORY L. & H. T. SMITH, for appellee.—That the defendant was liable for special damages incurred as shown by the facts in this case is settled beyond dispute.—*Baxley v. M. & T. R. R. Co.*, 128 Ala. 190. The court did not err relative to the testimony.—*Hood v.*

*Disston,* 90 Ala. 377. Where one is compelled to incur a liability by reason of a wrong of another he can recover the amount for which he becomes liable without the necessity of showing that he has paid such liability. —*Forbes v. Lofton,* 50 Ala. 396; 15 Cent. Dig. sec. 251.

MAYFIELD, J.—The action is one by appellee against appellant to recover damages on account of alleged unreasonable delay in the delivery of a shipment of lumber to plaintiff by defendant, which lumber was to be furnished by him to a third party, under a contract requiring delivery to a schooner, the Carrie A. Norton, under a charter party requiring demurrage of $46 per day.

Among the special damages claimed and recovered, and of which the most serious complaint is made on this appeal, was the demurrage which accrued during this delay, amounting to $391, and interest. The lumber arrived in Mobile on the night of April the 1st. It appears from the record that there is a custom or usage in Mobile, common to all shippers and carriers, that each railroad company undertakes to deliver freight at any point along the line of any other railroad, and makes switching charges for this service. The carrier bringing the freight to Mobile makes the necessary charges for this extra switching, and undertakes to make the delivery accordingly.

It appears that on April 2d appellee paid appellant for switching car No. 48880, and that on April 3d he paid the switching charges on car No. 85025, both of these cars being loaded with the lumber in question, and which, under the contract, was to be. delivered to the schooner named. The first car was not delivered until April 8th, and the other was not delivered until after the schooner had left Mobile, which was on April 11th.

The appellee paid $291 demurrage charges to the master of the vessel, and $100 which he agreed to refund to the third party to whom he sold the lumber, and who had paid this amount on account of demurrage, and to whom plaintiff, under his contract, was bound to refund, the third party being primarily liable to the vessel, and the plaintiff to the third party thus paying it. The complaint alleged that the defendant had knowledge of all these conditions of his contract as to this lumber when it contracted to deliver it and at the time it received payment for the switching necessary to the delivery, and knew that plaintiff would be compelled to pay the demurrage on account of the delay.

The main question involved on this appeal is: Can the plaintiff recover the demurrage paid by him and for which he became liable? It is insisted by appellant that it is not recoverable, because not within the ordinary measure of damages for delay in delivery of goods by a common carrier. If there be no contract, express or implied, and hence no duty to pay such charges, of course, they are not recoverable; but, if there be such a contract to pay such charges, they are it seems recoverable as damages in an action like this. Demurrage is said by the authorities to be, strictly speaking, a sum of money due and payable by express contract for the detention of a vessel in loading or unloading beyond the period of time in the contract of affreightment allowed for this purpose. But some of the authorities say that in this country the term seems to have acquired a wider definition, and applies to an improper detention or delay of a vessel. Mr. Justice Story in the case of *The Appollon*, 9 Wheat. 377 (6 L. Ed. 111) said "Demurrage * * * is often a matter of contract, but not necessarily so. * * * It is also adopted as a measure of damages in cases ex delicto. * * * An allowance by way of demur-

rage is the true measure of damages in all cases of mere detention, for that allowance has reference to the ship's expenses, wear and tear, and common employment." The same doctrine is announced by the New York court in the case of *Fisher v. Abeel,* 66 Barb. 381. In the case of *Ford v. Catesworth,* L. R. 4 Q. B., Blackburn, J., delivering the opinion, said: "We think it firmly established, both by decided cases and on principle, that where a party has either expressly or impliedly undertaken without any qualification to do anything, and does not do it, he must make compensation in damages, though the performance was rendered impracticable by some unforeseen cause over which he had no control." The complaint alleged all the facts necessary to authorize plaintiff to recover in this action. It pointedly alleges that the damages claimed were clearly within the contemplation of the parties to the contract at the time of the making thereof.

This court in many cases has declared and applied the rules announced in the famous English case of *Hadley v. Baxendale,* 9 Exch. 353, as to the measure of damages for breaches of contracts like this. Stone, C. J., in the case of *Daugherty v. Am. Un. Tel. Co.,* 75 Ala. 175, 51 Am. Rep. 435, speaking of the two rules announced in this noted English case, quotes from Sedgwick on Damages, the following: "The rule in *Hadley v. Baxendale,* as we have seen in the text, is that the plaintiff is entitled to recover (1) such damages as may fairly and substantially be considered as arising naturally, i. e., according to the usual course of things from the breach of the contract itself; or (2) such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the propable result of the breach." Chief Justice Stone, further on in the opinion, in discussing the fa-

mous English case, says: "What is meant by the words, 'in contemplation of the parties?' It would seem that contracting parties—certainly honest ones—do not contemplate the breach of their contracts when they enter into them, and hence cannot contemplate the consequences of a breach. Martin, one of the Barons of the Exchequer who participated in the decision in *Hadley v. Baxendale*, in the later case of *Wilson v. Newport Dock Co.*, 1 L. R. Court of Exch. 177, used this language: 'I do not adopt the qualifications mentioned by Mr. Baron Alderson in the judgment in *Hadley v. Baxendale*, as applicable to every case. They may have been perfectly right there, but they are not of universal application. * * *' Now this may properly enough be taken into consideration in the case of carriers and their customers, but in the bulk of broken contracts it has no application whatever. Parties entering into contracts contemplate that they will be performed, and not broken; and in the infinite majority of instances the damages to arise from the breach never enter into their contemplation at all. So, in *Collins v. Stephens*, 58 Ala. 543, we said: 'The measure of damages in a suit for a breach of contract * * * is the injury which results proximately from the breach. And whether the parties at the making of the contract contemplated or had in view the damages to result from a breach of such contract, or not, does not in the least vary the question, or the measure of recovery. * * *' We are aware that the language, or phrase we have been criticising, has been repeated and re-repeated in many judicial opinions. It has come to be almost a stereotyped phrase; so general, that it may appear to be temerity in us to question its propriety. We think, however, it is in itself inapt and inaccurate, and that its import has been greatly and frequently misunderstood. It is often employed in

apposition to, or as the synonym of, that other qualifying clause—'the natural result of,' or 'in the usual course of things.' We think this is a great departure from the sense in which Baron Alderson intended it should be understood. Altogether we think it obscure and misleading, and that an attempt to install it as one of the canons has caused many, very many, erroneous rulings. But, even if we retain the expression we have been commenting on as a qualifying property of recoverable damages, it is a rule by no means of universal application. Speaking of the decision in *Hadley v. Baxendale,* Ch. B. Pollock, in *Newport Dock Co. v. Wilson,* 1 L. R. (Exchr.) 177, said: 'It is quite true that the case it not applicable to, and does not decide, every case. No rule, no formula could do that. * * * No precise, positive rule can embrace all cases.' It may be, and doubtless is, well adapted to cases like *Hadley v. Baxendale,* where the subject of the contract, relatively insignificant in its primary aspect and apparent purpose, was yet, by special circumstances, magnified into much greater dimensions. This rule was properly applied in that case, because a knowledge of the extrinsic facts would naturally stimulate diligence. Can such a rule with any propriety be applied to transactions or lines of dealing, in which the same measure of diligence is required in each act or function, without regard to the quantum of interest to be affected by it? Legal dogmas should rest on some principle, which can be appreciated."

So in the case at bar. It was probably not contemplated by the parties to this contract at the time it was made that it would be breached; but the damages suffered by the breach of this contract, and which are claimed as demurrage, proximately resulted from the breach. Both parties were cognizant of

sufficient facts if they had contemplated this particular breach which would have made it certain that they would probably result. The undisputed evidence showed that the appellant undertook to deliver the lumber in question to the vessel in question, and that it knew, at the time it made the contract, that plaintiff (appellee) would be compelled to pay the demurrage charges upon the vessel, if the cargo was not delivered promptly, and that, with knowledge of these facts, it delayed or failed to deliver, for an unreasonable time, and thereby forced plaintiff to pay or to become liable for the demurrage charges occasioned by the delay thus caused.

It was not error for plaintiff to testify that he had a contract to deliver lumber to the schooner Carrie A. Norton within her lay days, and by which he was obliged to pay any demurrage that might be incurred in furnishing the cargo. The complaint alleged just such a contract and just such a liability. This evidence was an essential element of his right to recover damages such as were claimed. The defendant had contracted with the plaintiff to deliver this cargo to the vessel for plaintiff, and was liable to him for the damages which proximately resulted from its breach of the contract; and this evidence tended to show that the demurrage charges proximately resulted from the failure to so deliver. This evidence was objected to on the ground that it was incompetent, irrelevant, and immaterial. This objection is not good. There is shown no sufficient reason why the witness could not testify that he had such a contract, and it was certainly relevant and material. The question, together with the answer, was in its nature introductory, and was a shorthand rendering of the facts. At that time it had not been made to appear that the contract referred to was in writ-

ing, and no specific objection was made on this ground. If the contract referred to was oral, the evidence was certainly competent.—*Hood v. Disston*, 90 Ala. 379, 7 South. 732; *Woodstock Co. v. Reed*, 84 Aal. 493, 4 South. 369. The witness did not undertake to state what his obligation was, but simply that he had such a contract or agreement. This was merely introductory, and the particulars could be, and were, properly brought out by the subsequent explanation of the witness, and no possible harm was done defendant by the question or answer. It was likewise proper to allow this witness (the plaintiff) to testify that he was familiar with charter parties, and that they all contained demurrage clauses. Two questions were raised on the pleadings—one, if this particular charter party had such provision, and if the defendant (the appellant here) had notice of it. If all charter parties contained such provisions, then it was a question for the jury to find that defendant, a railroad company, knew of this provision when it contracted to deliver this cargo to a vessel which it knew was under a charter party, and which notice had been carried home to it. And, moreover, it was subsequently shown by the charter party itself that it did contain such provision, and that defendant was notified of it before it undertook to deliver; so no possible injury was done to defendant.

There was no reversible error in allowing the introduction of the charter party in evidence. It was shown that all vessels at that port were under such charter parties, and that they all contained such provisions as to the payment of demurrage charges for delay of the vessel. The defendant offered no evidence whatever as to these matters, and the plaintiff's evidence was without dispute as to the custom of all vessels to be under

such charter parties, and to have such clauses as to demurrage charges, just such conditions as this charter party had. It was undisputed that there was an unreasonable delay in the delivery of the cargo in question, and that the defendant caused this delay; and that plaintiff became liable for or paid these demurrage charges thus occasioned by the defendant's failure to perform its contract with the plaintiff to deliver the lumber to the vessel. It is shown without dispute that the defendant had actual notice thereof, and of the exact amount of the demurrage charges, and that plaintiff would be liable therefor if immediate delivery was not made. It had this knowledge when it undertook to deliver the lumber to the vessel and before, and when it collected the switching charges and undertook to transfer and deliver the lumber to the vessel Carrie A. Norton.

The defendant separately requested the court in writing to charge the jury, first, that plaintiff could only recover nominal damages; second, that plaintiff could recover nothing for the delay of the vessel by way of demurrage charges; and, third, that plaintiff could not recover as for the $100 demurrage charges which he had not paid, but only became liable for. The court refused these charges, and instructed the jury, at plaintiff's request in writing, as follows: "If the jury believe from the evidence that the defendant agreed to deliver the two cars in controversy to the schooner Carrie A. Norton, at the dock of the Mobile, Jackson & Kansas City Railroad, without making any agreement as to its method of delivery, and if it knew at the time that it made the contract that plaintiff would be made liable for demurrage of the schooner if the timber was not delivered at once, and if the defendant failed to deliver the timber in a reasonable time and thereby caused the plaintiff to

become liable for such demurrage, then the jury ought to find a verdict for plaintiff for the damage he so suffered, with interest." There was no reversible error in the refusing or the giving of any of these special charges. Those requested by defendant were clearly improper, under any phase of the evidence, and that given was certainly supported by parts of the evidence as applied to the only issue in the case, which was to recover damages for these demurrage charges only. It was conclusively shown that there was a delay of more than 8½ days, on account of defendant's failure to deliver, after the lumber had arrived in Mobile and after it had notice of the necessity for speedy delivery and that the demurrage would be $46 per day, and that it knew that demurrage would be so charged plaintiff before it undertook to deliver to the vessel over other lines, and before it collected the extra charges for switching over these lines, and no reason whatever is shown or attempted to be shown why the delivery was not made earlier, or why it could not have been made at once. The lumber is shown to have been in Mobile, ready for delivery, which, so far as the evidence indicates, could have been made at once as well as later. No excuse whatever is attempted to be shown for the delay, not even that it did not know of the necessity for a speedy delivery, and that demurrage charges would accrue on account of its delay in the delivery in accordance with its agreement.

It is insisted that the evidence did not show that it had notice of the necessity for a speedy delivery and that demurrage charges would accrue for delay at the time it undertook to transport the lumber to Mobile for plaintiff, and that it did not show when it so undertook to transport it to Mobile. This is not necessary, for the reason that the complaint does not contain any such allegations. There is no claim that it did not transport

the lumber to Mobile over its own line promptly. The evidence shows that it did so transport it, but it is claimed that after it arrived in Mobile, on its own line, it was its duty to deliver this lumber to the vessel, which could be done only over the lines of other roads, and that it undertook so to deliver, and collected extra charges for so switching it over these lines, and that, before it undertook so to deliver to this vessel, it did have specific and actual notice of the demurrage charges and that they would accrue unless prompt delivery was made, and that it was repeatedly urged to deliver after the arrival in Mobile and after notice of the consequences of the delay. It is true, as said by Mr. Hutchinson (Carriers, vol. 3, p. 1626, § 1368), that a carrier is not liable for special damages on account of delay, unless he knows of the special circumstances requiring prompt shipment, and knows of them before making the contract of shipment. Notice of the special circumstances after the execution of the contract is not sufficient. Where, however, notice is given of circumstances which will occasion special damages after the contract to carry has been performed, and after the goods have arrived for delivery, he will be liable for such special damages if he negligently fails to make such delivery of the goods. In such case, knowledge of these facts when the contract for transportation is made is unnecessary. The loss did not arise from failure to transport. It was from failure to deliver, and from the failure to perform the simple duty to deliver, due to negligence, at a time when the probable consequences thereof were fully disclosed, and before defendant made the special arrangement to deliver over other lines, and before it collected the switching charges therefor. As is said by Mr. Hutchinson: "There would, in our opinion, be manifest injustice in requiring the plaintiff, rather than the

defendant, to bear this loss arising from the fault of the agent"; and he cites the case of *Bourland v. Railway Co.*, 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647.

It follows that there was no reversible error, and that the judgment must be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ.. concur.

### ON APPLICATION FOR REHEARING.

PER CURIAM.—Counsel for appellant, judging from their briefs on the original submission and on this application, have entirely misconceived the issues upon which this trial was had in the lower court. The complaint consisted of one single and simple count, which based the cause of action solely upon the negligence of defendant in failing to promptly deliver two carloads of lumber. The damages sought to be recovered and those recovered were demurrage charges, with interest, alleged to have been occasioned by the negligence of defendant set up. The demurrage charges were specific and certain in amount, to wit, $391. No objection was taken to this complaint by motion to strike or by demurrer, and no special pleas were filed thereto. The general issue was the only defense interposed, and no evidence was offered by defendant to disprove the complaint. The plaintiff's evidence proved, or certainly tended to prove, every allegation in the complaint. The case was fairly submitted to the jury, and they found a verdict for the amount claimed.

The only error urged against the charge of the court was that the damages were not recoverable, and, if recoverable, they were not proven. The evidence indis-

putably proved every averment of the complaint except as to the length of time of the delay occasioned by the negligence alleged; and, as to this, there was ample evidence to support the finding of the jury. The charge of the court did not attempt to instruct the jury as to the length of time during which the delay was the result of the defendant's negligence; nor did it instruct the jury as to how much damages, if any, were recoverable. These questions were properly submitted to the jury, and found against the defendant.

Counsel for appellant insist in their brief that the contract breached in this case was one to ship lumber from Fairford, to Mobile, Ala., and that defendant had no knowledge of any facts or circumstances, such as to render it liable for special damages, at the time it made this contract, and that, therefore, such damages are not recoverable, though it did subsequently acquire such knowledge. The answer to this, as we stated in the original opinion, is that this action is not on such contract, nor for the breach of such contract. No such contract is set up in the complaint, nor by special plea as a defense. The mere fact that some of the evidence incidentally shows that there was at one time such a contract between these parties as to the subject-matter of this suit is wholly immaterial, because not declared on. There is no claim as for a breach of this contract. There is no claim made that there was such a failure to transport. The cause of action sued on is in tort for a failure to deliver to the vessel Carrie A. Norton after the cars arrived in Mobile. This duty is not claimed to have arisen until after the cars arrived in Mobile and were ready for delivery to the plaintiff. It is undisputed that the defendant did undertake to deliver to this vessel as per instructions from plaintiff, and that it failed to deliver promptly, that no excuse whatever was shown or

attempted to be shown for the delay, and that plaintiff suffered loss as claimed, in consequence of such delay. In order to respond to the argument of appellant's counsel, however, we quote in the original opinion at length, from what we conceive to be leading authorities, to the proposition that the result would be the same if the duty to deliver had depended entirely upon the original contract to transport and deliver, as claimed by appellant.

The plaintiff was clearly entitled to the general affirmative charge as to nominal damages, and the only question resting in inference was the time of delay, and consequently the amount of demurrage occasioned by such delay; and, as before stated, the evidence certainly tended to support the finding of the jury as to the full amount rendered.