125 So.2d 268

**SOUTHERN METAL TREATING CO., Inc.,**

**v.**

**C. Vann GOODNER et al.**

**6 Div. 464.**

Supreme Court of Alabama.

Dec. 1, 1960.

J. Reese Murray, John H. Morrow and White, Bradley, Arant, All & Rose, Birmingham, for appellants.

514

Sydney Lavender, Gilbert E. Johnson and Deramus, Fitts & Johnston, Birmingham, for appellees.

STAKELY, Justice.

This is an action by C. Vann Goodner, Jr. and Lillian Goodner (appellees), individually and doing business as Goodner Construction Company, to recover from Southern Metal Treating Co., Inc. (appellant), the sum of $4,000 as the reasonable value of work and labor done and materials furnished by plaintiffs to defendant at the latter's request. Originally J. P. Lovoy, President of Southern Metal, was joined as a party defendant. Prior to the submission of the case to the jury, however, Lovoy was stricken as a party.

After the introduction of evidence, plaintiffs' claim was submitted to the jury together with three pleas filed by the defendant. Plea A was a plea of the general issue. Plea B in substance alleged that in constructing or undertaking to construct for defendant a furnace, or in offering to undertake that work and labor, the plaintiffs violated the provisions of Chapter 7, Title 46, Code of 1940, which makes it unlawful to practice engineering in this state without being duly registered to do so, and were therefore prohibited from recovering the value of their services to defendant. Plea C was in substance a plea to recover by way of recoupment, $10,000 as damages allegedly arising out of certain defects in the work and labor performed and the materials furnished by the plaintiffs.

Trial of the action resulted in a verdict for the plaintiffs in the sum of $2,149.23. A subsequent motion for a new trial filed by the defendant was overruled. This appeal followed.

Appellant contends that this case involves the public policy of this state, under the above-mentioned provisions of the Code and the breach of a written contract on the part of the appellees, that as a matter of law the appellees offered "to practice" engineering and as a matter of fact "attempted to practice engineering" and in fact failed to properly engineer the furnace. Furthermore according to the appellant, appellee is totally and completely unqualified to do or offer to do any engineering work and makes no claim that it is qualified to do or offer to do any engineering work and further according to the appellant the "structure" deposited by appellee on appellant's premises had thirty or more material defects and, finally, according to the appellant the structure is not the "engineered furnace" described in the written contract. For example, it is claimed that the width of the furnace structure is too narrow and the length too long, that its arches fell in, its doors would not shut and would freeze and lock in place when appellant attempted to use it and that it has a limited use and a high maintenance cost.

Appellant makes 27 assignments of error, raising a number of questions of law. Appellant insists on assignments 1 and 2, based on the refusal of the trial court to give for appellant the affirmative charge, with or without hypothesis. In support of its position under these assignments, appellant contends that one who practices or offers to practice engineering for another without being properly licensed to do so under Chapter 7, Title 46, Code of 1940, is not entitled to recover for such services.

We agree that this position is correct as a proposition of law. While the particular question as to engineers is a novel one in this state, this court has held unenforceable the contract of a realty broker who is not licensed in accordance with the requirements of Title 46, Chapter 14, Code of 1940, or of a predecessor statute. Faulkner v. Stapleton Insurance & Realty Corp., 266 Ala. 437, 96 So.2d 761; Waldrop v. Langham, 260 Ala. 82, 69 So.2d 440. In Knight v. Watson, 221 Ala. 69, 127 So. 841, 842, this court said:

**516**

"A statute imposing a license tax as a revenue measure merely, although declaring the doing of business without such license unlawful and affixing a penalty as a method of enforcement, does not render void and unenforceable contracts made without such license. * * *

"But an act under the police power, designed to regulate the business, to protect the public against fraud and imposition, requiring a license as evidence of qualification and fitness, and prohibiting any act of business under penalty, unless such license is first obtained, does render such contracts illegal, void, and unenforceable in actions for the recovery of compensation and the like."

In our judgment the real estate cases are applicable to the instant situation. The engineer statute here in question is likewise a police measure, by its own terms enacted "in order to safeguard life, health, and property." By § 150 of the statute it is made a punishable misdemeanor to "practice, or offer to practice, the profession of engineering * * * without being registered or exempted in accordance with the provisions of this chapter * * *." We conclude, therefore, that a contract to engineer or an offer to engineer, made by one not duly registered in accordance with the provisions of the Code, is void and unenforceable.

It follows that recovery for services on any theory of implied contract is equally barred, for such recovery would be no less violative of the public policy expressed in the engineer registration statute.

Our view is in accordance with that of the Supreme Court of Virginia in its recent decision in Clark v. Moore, 196 Va. 878, 86 S.E.2d 37, decided under a licensing statute similar to the Alabama statute. See 53 C.J.S. Licenses § 59(b), pp. 714–715.

■ The more difficult question remains, however, whether the alleged activities of the appellee constitute the practice of engineering or offer to practice prohibited by the statute.

It is not disputed that appellee Goodner is not a licensed engineer. It is less clear though whether appellee, who is conceded to be a licensed contractor in this state, has engaged in the proscribed activities. Appellant relies on appellee's letter of April 24, 1957, to appellant, wherein it is said: "In accordance with our conversation on Tuesday, April 23, we propose to *engineer* and build one General Purpose Oven Furnace * * *" (emphasis added), and which then sets forth extensive specifications for this furnace. Appellant urges that this letter constitutes, as a matter of law, an offer to engineer, and that appellee's attempts to carry out the terms of the letter constitute an attempt to engineer, as a matter of law, within the meaning of the registration statute and that since appellee's own testimony shows that he was not a registered or qualified engineer, the affirmative charge should have been given in appellant's favor.

Title 46, § 130, Code of 1940, defines "professional engineer" as follows:

"* * * a person who, by reason of his knowledge of mathematics, the physical sciences, and the principles of engineering, acquired by professional education and practical experience, is qualified to engage in engineering practice as hereinafter defined. The practice of professional engineering within the meaning and intent of this chapter includes any professional service, such as consultation, investigation, evaluation, planning, design, or responsible supervision of construction in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects, wherein the public welfare, or the safeguarding of life, health or property is concerned or involved when such professional service requires the application of engineering principles and data. * * *."

In contrast, Title 46, § 65, Code of 1940, defines a general contractor as one who, for

a fee: "undertakes to construct or superintend the construction of any building, highway, sewer, grading, or any improvement or structure where the cost of the undertaking is ten thousand dollars or more * * *."

It is by no means certain that the activities of the appellees fall within the statutory definition of engineering, as compared, for example, to that of mere contracting, which appellee Goodner was licensed to do. The fact that the appellee's letter contract of April 24 contains the phrase "to engineer" is not within itself conclusive, since that phrase is in a letter written by a layman. There was considerable and conflicting evidence, which as we shall later show was properly received as to what the parties intended by the use of this term and what obligations they anticipated it would carry.

It is questionable that appellee ever represented himself to appellant as a qualified engineer. Goodner himself testified that he never offered to perform the professional services, such as designing, consultation, evaluation, and planning, which the statute associates with the practice of engineering, but that he acted throughout only as a general building contractor, which he informed appellant he was. There was evidence tending to show that appellees had been supplied with a set of plans or drawings for the construction of the furnace, which fact, if true, would support the contention that appellee acted only as a contractor. On the other hand, there are indications that these drawings were not actually used in the construction of the furnace.

It was the proper function of the jury to resolve any conflicts in the evidence and to determine any issues of credibility. It was the proper function of the jury to apply the law, as set forth in the statute and explained in an appropriate charge, to the facts of the case as the jury might determine them. Under the circumstances of this case, we cannot say that appellees have, as a matter of law, acted outside the allowable bounds of contracting and into the prohibited ground of engineering, or that the trial court erred in refusing the affirmative charge for the appellant. The determination of whether the activities of appellees were in violation of the engineering statute was properly a question for the jury.

■ The trial court in effect gave this question to the jury by explaining the statutory provisions and giving the following oral instructions: "If you are satisfied from the evidence that this plaintiff engaged—in connection with this contract engaged in activities prohibited by this section, that would be a bar to his recovery, because it is without dispute he had no such license."

In addition, the trial court gave, on request of the appellant, the following written charge: " * * * if you are reasonably satisfied from the evidence in this case that the plaintiffs practiced or offered to practice as a professional engineer in this case then you cannot return a verdict in favor of the plaintiffs in this case."

Appellant contends, in its assignment of error number 3, that the oral charge above quoted imposed too high a burden of proof upon the appellant in regard to this issue in that it conveys the impression to the jury that it must eliminate all doubt and uncertainty before it could find for the defendant on this issue. The proper and necessary phrasing, according to the appellant, is that the jury be "reasonably satisfied". We think that this contention is correct and that it reflects the long-standing view of this court and that the omission of the word "reasonably" constitutes fatal error. Bierly v. Shelby Iron Co., 208 Ala. 25, 93 So. 829; Nabers v. Long, 207 Ala. 270, 92 So. 444; Louisville & Nashville R. R. Co. v. Benton Mercantile Co., 219 Ala. 223, 121 So. 716; Hackney v. Dudley, 216 Ala. 400, 113 So. 401; Alabama City, G. & A. Ry. v. Sampley, 169 Ala. 372, 53 So. 142; Torrey v. Burney, 113 Ala. 496, 21 So. 348.

Appellee urges that the failure of appellant to object to the oral charge when and as given constitutes a waiver of the objection or that the error was cured by the in-

**518**

clusion of the proper phrasing in the written charge. But inasmuch as it will be necessary, for reasons which we shall presently set forth, to remand the cause on another ground, we see no necessity to consider this contention at the present time.

For the same reason it is unnecessary for us to consider appellant's contention, raised by its assignments 23, 24 and 25, that the verdict was contrary to the weight and preponderance of the evidence and that the trial court erred in overruling appellant's motion for a new trial.

■ Appellant's assignment of error No. 6 relates to alleged errors in permitting the appellee to introduce testimony which, appellant contends, served to vary, contradict or change the terms of the written letter contract of April 24, including evidence of oral negotiations and conversations prior to the written letter contract, tending to show that in the prior negotiations nothing was said with respect to "engineering" the furnace and that appellee Goodner had not told Lovoy, appellant's president, that he was an engineer.

While we agree with appellant that the letter of April 24 constitutes the contract between appellant and appellee for the construction of the furnace, we cannot agree that the evidence given by appellee served to vary, alter or contradict the written terms of the letter. We have already pointed out that the phrase "to engineer", as used in this letter, is not one of conclusive exactness or precision. What import the term, as used in the letter and as contemplated by the parties, may carry is indeed one of the critical issues of this case, and one that must be resolved by the jury. In short, the jury must determine just what the contractual obligations actually were. In aid of that determination and for the purpose of resolving that ambiguity and uncertainty of the meaning of the terms in the letter, such parol evidence may properly be received. In Mobile County v. Linch, 198 Ala. 57, 62, 73 So. 423, 435, this court said:

"It is undoubtedly true that if a contract be definite and certain, and be in writing * * * parol evidence is not admissible to contradict or impeach its provisions; but if it be indefinite or uncertain in its meaning, or there are latent ambiguities, parol proof is admissible and proper, not to contradict or impeach the writing or documentary and record evidence, but to explain the apparent inconsistencies and repugnant provisions, and thus give effect to the writing as a whole."

See also Coley v. W. P. Brown & Sons Lumber Co., 251 Ala. 235, 37 So.2d 125; McClendon v. Eubanks, 249 Ala. 170, 30 So.2d 261; Williams v. Johns-Carroll Lumber Co., 238 Ala. 536, 192 So. 278.

■ Assignments 8 and 9 are similar. Assignment 8 is based on the reception of testimony by Goodner relating to conversations between the parties about the price for construction, tending to show how that price was reached. Assignment 9 relates to testimony by Goodner to the manner of the computation of the price and to the fact that nothing was included in the figure for engineering services. We think this testimony relevant to show what obligations the parties anticipated in concluding the contract, and properly admissible under the principles set forth above.

■ Assignment 10 presents a like situation. Appellee Goodner testified in relation to a drawing for a furnace similar to that in question that "it was very similar to this drawing except he wanted seven feet from this wall to this wall (indicating) and actually on the outside—you might say a ten-inch bigger furnace than he shows here," or six feet two inches between the baffles. Appellant points out that the writing calls expressly for a furnace with a seven-foot effective hearth, and argues that the appellee's testimony is in direct contradiction to the written words. Hence what constitutes an "effective hearth" is not clear. There was some evidence in-

dicating that the entire hearth, including the area above the baffles, was usable and therefore effective hearth space. We think this testimony admissible as an aid to the resolution of that uncertainty.

■ Assignment 7 relates in the main to matter similar to that considered in relation to assignment 6. The testimony of appellee Goodner here objected to was that he never offered to perform any professional services, such as consultation, investigation, evaluation, and the other criteria for "engineering" spelled out in the registration statute. For the reasons above discussed, we consider this testimony likewise admissible.

Assignment 21 attacks the ruling of the trial court which prevented the appellant from proving that a claim was made against appellant as a result of damage done to metal which was treated in the furnace in question. In his opening statement appellant's counsel indicated that this loss was in the amount of $1,400. This sum appears to represent a compromise figure paid by appellant to a third person for damages to metals being treated in the furnace.

■ Appellee contends that this evidence was properly excluded, since, according to appellee, appellant could not as a matter of substantive law properly recover for this item. Under the oft-stated rule for damages in contract cases, as appellee points out, damages recoverable are limited to such as either arise naturally, according to the usual course of things, from the breach itself, or such as may reasonably be supposed to have been in the contemplation of both parties, when the contract was made, as the probable result of the breach. Alabama Water Service Co. v. Wakefield, 231 Ala. 112, 163 So. 626; Samuels v. Scott, 212 Ala. 679, 103 So. 848; Cato v. Williamson, 209 Ala. 477, 96 So. 321; Southern Ry. v. Lewis, 165 Ala. 451, 51 So. 863; Dickerson v. Finley, 158 Ala. 149, 48 So. 548; Western Union Telegraph Co. v. McMorris, 158 Ala. 563, 48 So. 349. Recovery for breach of contract under a plea of recoupment is the same as could be had in an action for that breach. Cato v. Williamson, supra.

■ Appellee points out that the alleged damage arises out of a collateral undertaking which did not come into existence until a year after the primary contract was entered into between appellant and appellee, that appellee therefore could not possibly have had knowledge or notice of such collateral undertaking at the inception of the construction contract, and that therefore the collateral undertaking could not reasonably have been in contemplation of the parties at the inception of the construction contract. This contention might be persuasive if the issue here involved were one of profits anticipated by appellant under a collateral agreement, or even one of liability or added expense for failure to perform the collateral contract. Blankenship v. Lanier, 212 Ala. 60, 101 So. 763; Dickerson v. Finley, 158 Ala. 149, 48 So. 548; Reed Lumber Co. v. Lewis, 94 Ala. 626, 10 So. 333; Swift v. Eastern Warehouse, 86 Ala. 294, 5 So. 505. As we understand the matter, however, appellant's claim was for money paid out-of-pocket by appellant as a result of damage or injury to materials being treated in the furnace, damage which allegedly was the result of defects in the furnace. The loss to appellant comes from the injury to the materials, not from the fact of the collateral agreement or the inability to perform that agreement. There was some evidence that appellee knew that the furnace was to be used in the treatment of metals. The letter contract of April 24, with its provisions for burners and reference to temperature controls, is itself indicative of knowledge that temperature control would be required for proper treatment of metals.

This situation is similar to that before the Court of Appeals in Dickson v. Alabama Machinery & Supply Co., 17 Ala.App. 195, 84 So. 416, 417. That case was an action of assumpsit on the common counts for work done under an agreement to roof the defendant's barn. Defendant sought re-

**520**

coupment for damage done to wheat, harvested from his plantation and stored in the barn after the completion of the work, the damage resulting from a leak or leaks in the roof. The Court of Appeals held that such damages were properly recoverable by the defendant under his plea of recoupment and said:

"It is a matter of common knowledge, that barns on plantations in this section are maintained for the storage and protection of farm products and other property, and if, as a consequence of the breach of the contract by the plaintiff to place upon the defendant's barn a nonleakable roof, damage proximately resulted to the defendant's wheat stored in such barn from rainwater leaking through the roof, such damages must be held to have been within the contemplation of the parties in making the contract and are recoverable. * * *

"Whether there was a breach of the contract and as to whether the damage to the defendant's wheat proximately resulted from such breach, or from the negligence of the defendant in storing the wheat in the barn before the roof was completed, were questions of fact for the jury."

Similarly, in the instant case, there is evidence that appellees had knowledge that metals would be treated in the furnace they constructed. We do not think it controlling that the farm produce damaged in the Dickson case was the property of the party defendant, while the metal in question in the instant case was that of some unidentified third person. The significant factor, common to both cases, is that the supplier of the work and labor had reason to know that the items or materials would be placed in the structure, and therefore could reasonably contemplate, at the inception of the contract, injury to those items or materials and a monetary loss to the recipient of the work and labor, as a result of a breach of the contract. As pointed out in the Dickson case, whether there was in fact a breach

of the contract and whether the loss was incurred as a result of that breach, and, more particularly, as a result of some defect in the furnace, were properly questions for the jury.

We think, therefore, that the exclusion of appellant's evidence relating to this alleged loss was reversible error.

Appellant's remaining assignments of error raise several additional questions relating to the admissibility of evidence below. Since these questions are likely to be of importance to any subsequent trial of this cause, we shall attempt to treat them in turn.

■■■ Assignment 19 relates to the alleged error of the trial court in refusing to allow appellant to show that the City of Birmingham had condemned the gas piping of the furnace in question or to introduce for that purpose a red condemnation tag purportedly placed on the furnace or to show the original condemnation order, on objection to the matter being hearsay. Appellant stated at trial and now contends in brief, in substance, that the offer was made not to show the truth of the condemnation order but only to show that appellant was in fact prohibited or prevented from using the furnace.

Appellant cites the language of 6 Wigmore, Evidence § 1766 (3 ed. 1940), as follows:

"The theory of the Hearsay rule * * * is that, when the human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. * * * The Hearsay rule

excludes extrajudicial utterances only when offered for a special purpose, namely, *as assertions to evidence the truth of the matter asserted."*

Appellant then cites several cases in which extrajudicial utterances or statements were admitted for their value to show notice or warning received. Davis v. Davis, 255 Ala. 215, 50 So.2d 723; Emich Motors Corp. v. General Motors Corp., 7 Cir., 181 F.2d 70; Moen v. Chestnut, 9 Wash.2d 93, 113 P.2d 1030.

We think that the reference to the notice cases is not well taken. Here it is not the fact that appellant knew that the furnace was condemned or defective that is material or of probative value, or the fact that the furnace may have been condemned and thus made unusable. The quality of the furnace being in issue, the material inquiry would be as to why the furnace could not be used or why it had been condemned. This inquiry leads directly to the reason for the city's condemnation action and to the city's opinion or evaluation of the furnace. The introduction of those reasons or that evaluation runs directly afoul the hearsay rule. The case is similar to that of Atlantic & St. A. B. R. R. v. Spivey, 211 Ala. 520, 100 So. 759, where, in an action against a railroad for loss by fire set by engine sparks, this Court held inadmissible as hearsay a report of the federal government, inspecting and approving the condition of the engine. See Young v. Arntze & Bros., 86 Ala. 116, 6 So. 253. There was no error in excluding this evidence.

Assignments 13 through 16 and 18 relate to the trial court's exclusion of testimony of Mr. Buckland Cobb, Executive Secretary of the State Board of Registration for Professional Engineers and Land Surveyors, and of answers to certain questions by Mr. Cobb, as an expert, by which appellant attempted to show that the structure provided by appellee was not properly engineered and that proper engineering was necessary and that the letter contract required the application of engineering principles and data. There is considerable controversy between the parties as to whether such subjects are proper for expert testimony. We note, however, and appellee has pointed out, that while the trial court held that Mr. Cobb was "a qualified engineer", the trial judge indicated that "I don't know that he is qualified in the field of oven construction."

The questions posed required considerable knowledge and understanding of the construction and design of ovens or furnaces. An expert may not testify to his opinion on matters outside the scope of his training and experience. Central Aviation Co. v. Perkinson, 269 Ala. 197, 112 So.2d 326; Capital Motor Lines v. Gillette, 235 Ala. 157, 177 So. 881; Armour & Co. v. Cartledge, 234 Ala. 644, 176 So. 334. The competency of the witness to testify as an expert on a matter is within the sound discretion of the trial court, whose decision will not be disturbed except for palpable abuse. Johnson v. Battles, 255 Ala. 624, 52 So.2d 702; Dorsey Trailers, Inc. v. Foreman, 260 Ala. 141, 69 So.2d 459; Kay-Noojin Development Co. v. Kinzer, 259 Ala. 49, 65 So.2d 510. In the absence of any attempt by appellant to develop the qualifications of this witness in the field of oven construction, we are not prepared to say that such abuse exists in this case.

Assignment 11 concerns the admission, over objection, of testimony by appellee Goodner to a conversation between appellee and Lovoy, as follows:

"A. He wanted me to shave the walls down, the brickwork so he could get that wheel in it.

\*      \*      \*      \*      \*      \*

"A. \* \* \* I said, 'Jake, I can't cut those walls down because they are nine inches thick and the drawings call for a nine-inch wall and if I cut them down I have got to have an acceptance of the furnace.'

\*      \*      \*      \*      \*      \*

"A. He said, 'You cut them down and I will pay you' \* \* \* the balance of $3500.

*   *   *   *   *   *

"Q. Did you have the walls cut down? A. I did the next morning."

Similarly, assignment 12 relates to the following testimony, over objection of appellee:

"A. Mr. Lovoy got on the phone and said 'You want to talk to me?' And I said, 'Yes, Turner called me and he wants his money for the work on this steel door.'

"Q. Was that additional work after the furnace had been lit up and there was a complaint about the doors? A. I am not positive as to the time but the job was well in the finishing process.

*   *   *   *   *   *

"A. And Mr. Lovoy said, 'You want me to pay him?' And I said, 'If you are satisfied with his work, go ahead and pay him.'

*   *   *   *   *   *

"Q. * * * [D]id Mr. Lovoy then pay Mr. Turner after you had told him to go ahead and pay him if he was satisfied with the work on the doors? A. He paid him."

Appellant contends that the testimony referred to constituted an attempt to prove new contracts, different from the original letter contract alleged in the pleadings and which are unsupported by the pleadings and which must be specially pleaded. We feel, however, that this testimony goes to the issue of the acceptance of the work and labor and materials furnished by the appellees in the construction of the furnace, acceptance being material to appellees' case for quantum meruit. Additionally, this testimony was relevant to the issue of "extras" furnished in the furnace construction and constituting a part of the total work and materials for which appellee sought recovery. Liability for such items, if any, is predicated not upon the original contract but upon materials furnished and work done and accepted pursuant to an arrangement which was mutual and additional to the original contract. Bonnie v. Griffin, 252 Ala. 299, 40 So.2d 870. There was no error in admitting the testimony in question for these purposes.

Assignment 4 relates to the refusal of the trial court to give defendant-appellant's requested written charge number 8, which stated:

"If you are reasonably satisfied from all the evidence in this case that the services of a qualified engineer, properly registered or exempt from registration under the laws of Alabama, was attained by the plaintiffs in the construction and design of the burner equipment used in the furnace, then this does not entitle you to return a verdict for the plaintiff unless you are further reasonably satisfied from all the evidence that the design and construction of the steel fabricated casing and the design and construction of the brick work of the furnace did not require evaluation and analization of problems which demand engineering skill."

Appellee had introduced testimony to the effect that the burner equipment for the furnace had been designed by an engineer in Ohio or Pennsylvania, whose professional services would, in appellee's view, be exempt from the registration statute. Title 46, § 145, Code of 1940. The rejected charge reflects appellant's view that the burner equipment constitutes but a part of the overall furnace and that the design and construction of the rest of the furnace could also require that the engineering skill which, appellant contends, appellees were not licensed or qualified to provide. There was, however, evidence tending to show that the appellees were furnished with plans and drawings. This fact, if established, would indicate that any necessary engineering for the furnace, other than for the burners, was supplied other than by appellees and tends to show that the appellees had acted

not in the proscribed capacity of engineer but only in the lawful capacity of contractor, even if engineering skill was required for the non-burner parts of the furnace. A mere showing that engineering skill was required for the design and construction of the non-burner parts would not alone be tantamount to a showing of a violation of the engineering statute. The charge as requested would thus have been misleading on this point and was properly refused.

For the error indicated, the cause is reversed and remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.