The plaintiff appeals from a judgment based on a directed verdict in favor of the defendants, a doctor and a hospital, in a medical malpractice action. The plaintiff also appeals from the trial court's summary judgment in favor of the doctor's employer.
On July 3, 1986, Teresa Levesque, as mother and next friend of Anthony Levesque, a minor, brought an action against Northeast Alabama Regional Medical Center ("NEARMC") and Dr. Dolores Victoria[1] for damages for injuries she alleged Anthony had sustained because of negligence on the part of the defendants during his delivery on July 15, 1978. Later, the plaintiff amended her complaint to add Anniston Family Practice Residency Program ("AFP") as a defendant, alleging that AFP had negligently failed to supervise or train Dr. Victoria; a yet later amendment alleged that AFP was liable on a respondeat superior theory because it had employed Dr. Victoria at the time of the alleged injuries. Before the trial, AFP was awarded a summary judgment because the statutory period of limitations on the respondeat superior action had run before the complaint was amended to add AFP. *Page 447 
Although the plaintiff raises several issues relating to the alleged spoliation of medical records by NEARMC, the admissibility of testimony concerning NEARMC's standard of care under the "corporate liability" theory, and the trial court's summary judgment for AFP on statute of limitations grounds, these issues are dependent upon the resolution of the primary issue: whether the plaintiff presented sufficient evidence of proximate causation in the negligence action against Dr. Victoria to avoid the directed verdict entered by the trial court. Because we decide the proximate causation issue adversely to the plaintiff, we do not reach the other issues presented.
The facts giving rise to this action, although disputed on several points, are basically as follows:
On July 15, 1978, Teresa Levesque was transported to NEARMC about 1:00 a.m. in order that she might deliver her baby. At that time, Ms. Levesque told hospital personnel that she was having contractions about four to five minutes apart. She was evaluated by Dr. Alig, the attending family physician, and Dr. Holder, a resident on duty. Those doctors found her cervix to be dilated to about four to five centimeters at that time. Shortly thereafter, she was given 100 milligrams (mg) of Demerol. At that point, her labor seemed to be proceeding normally. Ms. Levesque was given another 50 mg of Demerol at 4:35 a.m. At approximately 5:00 a.m., her "bag of waters" ruptured, and the fluid was stained with meconium.[2] Ms. Levesque's cervix still had not dilated much more than the initial four to five centimeters.
At 7:40 a.m. hospital personnel administered another 50 mg of Demerol to Ms. Levesque.[3] Dr. Victoria arrived at NEARMC about 8:00 a.m. to begin her shift. She examined Ms. Levesque; Dr. Victoria testified that she found nothing abnormal about the labor at that point. After another 50 mg of Demerol had been administered to Ms. Levesque about 10:30 a.m., Dr. Victoria administered the "saddle-block" anesthesia at 10:45 a.m. and delivered Anthony with the aid of forceps at around 11:00 a.m.[4]
Although the NEARMC records indicate that Anthony was a "normal newborn," his pediatrician, Dr. Vincent Fuselli, testified at trial that Anthony suffers from several disorders: (1) right hemiparesis, or an imbalance in the motor skills between the right and left sides of his body; (2) severe mental retardation; (3) epilepsy; and (4) optic nerve hypoplasia. There was also evidence that Anthony suffers from cerebral palsy. The plaintiff sought to prove, through the testimony of two experts, Dr. Engel and Dr. Fuselli, that Dr. Victoria and NEARMC were negligent during Anthony's delivery and that their negligence caused him to develop the conditions from which he now suffers. Specifically, the plaintiff alleges that the presence of the meconium-stained fluid, coupled with the nondilation of Ms. Levesque's cervix for an extended period of time, should have alerted Dr. Victoria and NEARMC that her labor was not progressing properly, and that a cesarean section or other means of delivery should have been performed. Also, the plaintiff alleges that NEARMC negligently overadministered Demerol to her, and in doing so rendered her unable to properly deliver Anthony on her own. The plaintiff contends that all these factors acting in concert amounted to actionable negligence *Page 448 
on the part of Dr. Victoria and NEARMC.
To prevail on a claim of medical malpractice, a plaintiff must prove that the doctor breached the standard of care and that the plaintiff's injury was proximately caused by that breach. Ala. Code 1975, § 6-5-484; Hannon v.Duncan, 594 So.2d 85 (Ala. 1992); Bradford v.McGee, 534 So.2d 1076 (Ala. 1988). Ordinarily, the plaintiff is required to prove these elements through expert testimony. Dobbs v. Smith, 514 So.2d 871 (Ala. 1987);Lightsey v. Bessemer Clinic, 495 So.2d 35 (Ala. 1986);Bell v. Hart, 516 So.2d 562 (Ala. 1987).
Here, we are reviewing a directed verdict, and we need deal only with the proximate causation element. Because this action was filed before June 11, 1987, the "scintilla rule" applies. See Ala. Code 1975, § 12-21-12; Caterpillar Tractor Co.v. Ford, 406 So.2d 854, 856 (Ala. 1981).
The standard to be utilized in reviewing a proximate causation issue in light of the scintilla rule was recently restated by this Court in Hannon v. Duncan,594 So.2d 85 (Ala. 1992):
 "The rule of our cases in malpractice suits is that there must be something more than a mere possibility — something more than one possibility among others — that the negligence complained of was the cause of the injury. There must be some evidence to the effect that such negligence probably caused the injury. . . . But this does not eliminate the scintilla evidence rule. If there is a scintilla of evidence that the negligence complained of probably caused the the injury, a jury question is presented."
594 So.2d at 91, quoting Ensor v. Wilson,519 So.2d 1244, 1251 (Ala. 1988) (emphasis omitted). See Brillant v.Royal, 582 So.2d 512 (Ala. 1991); Williams v.Bhoopathi, 474 So.2d 690 (Ala. 1985).
The plaintiff asserts that certain testimony by Dr. Engel, one of her experts, establishes the proximate causation element. She specifically relies on the following exchange between her attorney and Dr. Engel in an offer of proof:
 "Q. The question, Dr. Engel, would be: Based on your education, training, and experience, would you describe to us if you have an opinion as to a reasonable medical certainty that could
generalized seizure disorders be caused
by the actions or inactions of Dr. Victoria during the labor and delivery of Anthony Levesque based on . . . the criticisms that you told us about in relationship to your opinions in the delivery of Anthony Levesque?
 "A. I believe in — the answer is yes. In all medical probability."
(Emphasis added.) The ensuing questions concerning Anthony's conditions of hemiparesis and optic nerve hypoplasia were phrased in exactly the same manner; Dr. Engel responded "yes, in all medical probability" to each of the questions.
These exchanges came in an offer of proof because defense counsel had objected to this line of questioning on two grounds. First, he had asserted that Dr. Engel was not qualified as an expert as to the causation issue. Second, defense counsel had contended that Dr. Engel was not proposing to testify that the actions of Dr. Victoria probably caused the injuries, but only that it was probable that her actionscould have been the cause of Anthony's injuries; therefore, defense counsel said, the testimony amounted merely to a statement that there was a possibility of causation, and was not legally sufficient. After hearing the offer of proof, the trial court agreed and refused to allow the jury to hear the testimony.
Defense counsel was correct on both grounds of the objection, and the trial court committed no error in its rulings. Dr. Engel admitted on cross-examination that he had no expert knowledge of the causes of any of Anthony's problems:
 "Q. You would agree with me, Dr. Engel, that you are not an expert on the causes of hemiparesis?
"A. That's correct.
 "Q. You agree with me, Dr. Engel, that you are not an expert on the causes of cerebral palsy? *Page 449 
"A. That's correct.
 "Q. You would agree with me, Dr. Engel, that you are not familiar with the eye or [the] visual problem known as optic nerve hypoplasia?
"A. That's correct.
"Q. That you have never studied it?
"A. That's correct.
"Q. That you do not know what causes it?
"A. That's correct."
An expert may testify only as to matters within his training and experience. Southern Metal Treating Co. v.Goodner, 271 Ala. 510, 125 So.2d 268 (1961); CentralAviation Co. v. Perkinson, 269 Ala. 197, 112 So.2d 326
(1959). Moreover, it is error for the trial court to allow an expert witness to testify as to matters outside his expertise.Cook v. Cook, 396 So.2d 1037 (Ala. 1981). Dr. Engel, although an expert in the OB/GYN field, admitted that he simply had no knowledge of the causes of epilepsy, hemiparesis, cerebral palsy, or optic nerve hypoplasia from which to render an expert opinion in regard to Anthony's problems. Therefore, his causation testimony was properly excluded.
Even if Dr. Engel were qualified as an expert on the causation issue, the plaintiff's claim would still fail, because Dr. Engel was unable to testify that acts or omissions of Dr. Victoria probably caused Anthony's injuries. The questions posed to Dr. Engel elicited only the answer that Dr. Victoria's actions probably could have caused the injuries; this answer falls short when measured by the standard by which evidence of proximate causation is tested. SeeHannon v. Duncan, supra. Moreover, the testimony of Anthony's other expert, Dr. Fuselli, also fails when measured by that standard. Dr. Fuselli testified that the etiology of Anthony's problems is unclear and that he could not state whether the actions or omissions of Dr. Victoria caused Anthony's problems. The plaintiff seeks to escape the consequences of this lack of evidence by extracting pieces of expert testimony on causation issues from Hannon,supra, and Davison v. Mobile Infirmary,456 So.2d 14 (Ala. 1984), and attempting to analogize them to the present situation. Hannon and Davison are inapposite to this case, because those cases involved direct testimony that actions of the defendant probably caused the plaintiff's injuries and thus involved testimony far stronger than that offered here.
The plaintiff offered no evidence of causation other than the testimony of Drs. Engel and Fuselli that we have discussed here. The absence of proof of causation applies to the allegations against NEARMC as well as to the allegations against Dr. Victoria.[5] Therefore, the plaintiff offered no evidence on this element of the cause of action. The summary judgment for AFP and the judgment based on the directed verdict for the other defendants are affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.
ADAMS, J., concurs in the result.
[1] The original complaint, filed on July 3, 1986, named Dr. Vincent Fuselli as a defendant rather than Dr. Victoria. Dr. Fuselli was dismissed as a defendant before he had answered, and Dr. Victoria was substituted on July 9.
[2] Ms. Levesque's expert witness, Dr. Joel Engel, testified at trial that the presence of this meconium fluid, which is actually the stool of the baby, might indicate problems in the mother's labor if coupled with other factors tending to show "distress," such as failure of the cervix to dilate properly, which was alleged to be the case here.
[3] Ms. Levesque alleges that the hospital failed to apply the "internal spiral electrode" — a device used for measuring the baby's heart rate — until about the time of the third administration of Demerol. Furthermore, Ms. Levesque alleges that the device actually came off during that period, making the hospital unable to measure the heart rate, which she says was crucial in light of the meconium-stained fluid.
[4] One of the most hotly disputed fact questions is whether Dr. Victoria was supervised by Dr. Alig, the attending physician on duty, at the time of the delivery. Because that question is crucial only with respect to Ms. Levesque's collateral issues, we decline to address it here.
[5] The claim against AFP is wholly derivative of the claim against Dr. Victoria, so the judgment in her favor on the merits supports the judgment in favor of AFP and moots the statute of limitations issue.