[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 719 
This is an appeal by Federal Mogul Corporation, the owner of a tapered roller bearing plant in Hamilton, Alabama, from a jury instruction limiting damages against Universal Construction Company and Pearce, DeMoss and Company, Inc., to a nominal amount. Plaintiff, Federal Mogul, further appeals from a directed verdict in favor of defendants Interstate Roofing Company, Johns-Manville Sales Corporation, and Wiley and Wilson, Inc.
Suit was brought in Jefferson County Circuit Court in July of 1976 by defendant Universal for a declaratory judgment determining the rights and responsibilities of the parties concerning the problems Federal Mogul was experiencing with the roof of its plant. After realignment the case went to trial with Federal Mogul as plaintiff and Universal (the contractor), Pearce, DeMoss and Company, Inc. (as guarantor of the contractor's performance), Interstate (the subcontractor who installed the roof), Johns-Manville (the manufacturer of the roofing materials), and Wiley and Wilson (the architects who prepared the building's plans and specifications), as defendants.
Wiley and Wilson's original specifications called for a four-ply built up roof. Federal Mogul, in an attempt to cut construction costs, requested that any bids submitted provide alternative suggestions. In response thereto, Universal proposed to use a two-ply roof known as a Twin-20 system and manufactured by Johns-Manville. Universal guaranteed this roof would perform in all aspects as well as the roof called for in Wiley and Wilson's specifications and that it was a twenty-year bondable roof.
Federal Mogul awarded the contract to Universal who in return subcontracted the construction of the roof to Interstate. Construction of the roof was completed in March or April, 1973.
The roof leaked from the beginning of plaintiff's occupancy in 1973. Interstate attempted repairs throughout the year and into 1974.
In late 1975, matters worsened, and plaintiff retained Babco Roofing Company to repair the leaks. On his first trip to the plant in November of 1975, the Babco representative indicated he felt repairs could be made. However, upon Babco's return in December of 1975 or January of 1976, ridges or buckling were found indicating a severe deterioration of the roof and structural damage. Babco determined it could not effect repairs due to this changed condition.
Plaintiff then contacted various purported experts in the roofing industry to solicit their opinions and advice. The primary basis of plaintiff's appeal is the exclusion of much of the testimony of two of these experts.
Plaintiff first complains that it was improperly denied the opportunity to prove its damages. In essence, the experts were unable to testify as to the extent of damage to *Page 720 
the roof and its value in its damaged condition. They were also prohibited from testifying as to specifications for reroofing they had prepared. Plaintiff argues this led to an improper charge to the jury that even if it found Universal and Pearce, DeMoss liable, it could only assess nominal damages against these defendants.
Next, plaintiff complains that the experts were wrongfully denied the opportunity to express opinions as to the quality of the workmanship in installing the roof and as to the suitability of the materials used in the roofing system. It is argued that this led to an erroneous granting of directed verdict in favor of Interstate, Johns-Manville, and Wiley and Wilson.
 I
Turning first to the excluded testimony itself we find the following:
The experts in question, Carl Cash and David Adler, both testified they were employed by Simpson, Gumpertz and Heger (SGH), a firm located in Boston, Massachusetts. The Boston firm provides engineering services, preparing structural designs and specifications. It also engages in investigations of structural problems and roofing systems, having investigated numerous cases of roofing and waterproofing systems' failures throughout the country.
Witness Cash testified he was employed by SGH as a chemist and has worked in the area of built-up roofing for more than twenty years. He has authored articles and manuals on roofing materials and standards as well as writing on the causes of built-up roofing systems' failures.
Adler testified he was a senior staff engineer of SGH with a degree in engineering from Tufts University. He has supervised the installation of several hundred built-up roofing systems throughout his career with various firms. He has been qualified by the National Roofing Contractors Association for a technical assistance program which provides roofing consultants for various projects.
Cash made five trips to Federal Mogul's plant and after taking sample cuttings from the roof for purposes of analysis, determined it needed replacements. Pursuant to contract with plaintiff he drew up specifications for this purpose.
The trial judge at first allowed these into evidence, but upon objection by defendants which led to his ascertaining that neither Cash as an individual nor SGH as a firm were licensed to practice architecture or engineering in the State of Alabama, ordered them expunged from the record. The apparent basis for this was his conclusion that the information Cash gained in inspecting the roof and utilized in preparing the specifications came as a direct result of his engaging in the illegal activity of practicing in Alabama as an architect or engineer without a license.
We hold it was error to exclude the specifications from the record. At this point we also note that the court further excluded a contract to reroof between plaintiff and Heritage Construction Company, based upon these specifications. The grounds for this were the same, i.e., that the construction firm was not licensed in Alabama. The court ruled the contract was void and unenforceable and therefore incompetent as evidence. Thus, plaintiff was unable to offer any evidence on the cost of replacing the allegedly defective roof.
As we find the same basic error led to the exclusion of both the specifications and the contract with Heritage, we address both of these issues at this time.
We observe the appellees raised the illegality of the documents at the trial below and also argue it in brief. Thus, they refer us to representative cases where unlicensed engineers, architects, and real estate brokers, suing to recover for their services rendered, were denied relief due to the unenforceability of their contracts. See Southern MetalTreating Co. v. Goodner, 271 Ala. 510, 125 So.2d 268 (1960).
The rationale behind these decisions is that such licensing statutes are an exercise of the police power, enacted for regulatory purposes, and designed to protect the public *Page 721 
against fraud and imposition. Our cases hold that contracts in contravention of these statutes are void and unenforceable and refuse to allow recovery on grounds of public policy.
As plaintiff points out, an analysis of these cases reveals a common strand running throughout. All cases where the argument prevailed were litigated between immediate parties to the contract with the defendants therein raising the illegality of the agreement as a defense to the action.
However, nonparties have not been so successful. Thus, inMarx v. Lining, 231 Ala. 445, 165 So. 207 (1936), a vendor utilized interpleader when faced with the conflicting claims of two real estate brokers to the commission on the sale of the vendor's property. One of the brokers asserted the other had no claim to the commission as she was not properly licensed. He reasoned this deficiency rendered the contract between the vendor and the rival broker void and unenforceable.
Our supreme court answered this by observing that contracts which are void, not because of any intrinsic immorality, but because they offend a statutory policy, may, in some instances, be enforced in a court of law because of the inability of the party affected to plead their invalidity. In applying this doctrine, the court held that the defense of illegality, although open to the parties and those claiming under them, cannot as a general rule be invoked by third persons.
We follow that general rule today and hold it was error for the trial court to exclude the specifications and contract on the grounds of illegality. These documents were crucial to plaintiff's case on damages, and their exclusion was instrumental in leading the trial court to its erroneous charge taking the issue of damages away from the jury.
Plaintiff further complains of the ruling below that neither Cash nor Adler could testify as experts in the field of engineering. However, the trial judge did indicate he would allow them to testify as experts on roofing materials and their installation.
We hold that such a mechanistic application of labels was inappropriate. In so ruling, the court created a distinction impossible of consistent enforcement, the record illustrating that a great deal of testimony within the realm of these men's expertise was erroneously excluded.
At the outset, we acknowledge that the question of whether a witness offered as an expert is shown to be qualified is within the discretion of the trial court. On review, its decision will not be reversed unless it clearly appears that it was prejudicially erroneous and worked an injury to appellant's cause. Gregarth v. Bates, Ala.Civ.App., 359 So.2d 404 (1978).
In holding that such error did occur here, we note that the overall effect of the ruling below is to require proof of proper licensure as a condition precedent to the giving of expert testimony in the field of engineering. Such a rule does not comport with the practice followed by Alabama courts. Generally, if by training, study, observation, practice, experience, or profession the witness has acquired a knowledge in a particular field beyond that of ordinary laymen, he has earned the appellation "expert" in that field. Aetna Life Ins.Co. v. Hare, 47 Ala. App. 478, 256 So.2d 904 (1972).
Furthermore, our decisions hold that experience and practical knowledge may qualify one to make technical judgments as readily as formal education. International TelecommunicationsSystem v. State, Ala., 359 So.2d 364 (1978). In International, the purported expert's qualifications were attacked on the grounds that he had no engineering degree and little formal training. Our supreme court, through Justice Beatty, noted his practical experience and affirmed the admission of his opinion, indicating any other course would have been improper.
We also note that the plaintiff did not experience difficulty in introducing Cash and Adler's testimony until the licensure problem erupted. This further buttresses our conclusion that the trial judge improperly equated lack of licensure with lack of *Page 722 
expertise and therefore failed to look to the proper yardsticks as developed in our decisional law.
In view of the above, the witnesses Cash and Adler, obviously educated and experienced in the field of engineering, should have been allowed to state their opinions as to such matters as the suitability of the roofing materials, the quality of the workmanship involved, the condition of the roof, and the need for replacement.
On appeal, the defendants take the position that even if Cash and Adler were qualified as experts, many of plaintiff's questions were objectionable as improper hypotheticals not containing sufficient facts.
We cannot agree. Many of the objections which were sustained on these grounds were actually directed to matters within the personal knowledge of the experts due to their inspection of plaintiff's roof. Thus, they were qualified to state their opinions without the employment of hypothetical questions. Gamble, McElroy's Alabama Evidence § 130.01 (3rd ed.). Moreover, a hypothetical question is not objectionable merely because it does not contain all facts in evidence which might tend to affect the answer. Clutts v. Clutts, 54 Ala. App. 43,304 So.2d 599 (1974). When the evidence as elicited is in conflict, the questioning party should state only the facts which tend to support his own theory of the cause. Gamble,McElroy's Alabama Evidence, supra.
Plaintiff's final evidentiary complaint centers around the trial court's refusal to allow certain testimony from Anthony Romeo, its manager of facilities planning, who also had considerable experience in the area of roofing. The court ruled Romeo was not an expert in this field and refused to allow his testimony as to the value of the defective roof.
While we are not prepared to say the trial court abused its discretion in finding Romeo was not an expert, Gregarth, supra, it nevertheless erred in precluding this testimony.
Section 12-21-114, Code of Ala. 1975, provides:
 Direct testimony as to the market value is in the nature of opinion evidence; one need not be an expert or dealer in the article, but may testify as to value if he has had an opportunity for forming a correct opinion.
The witness Romeo was clearly shown to have had sufficient opportunity for forming a correct opinion. He was responsible not only for the original construction of plaintiff's plant but also for the reroofing. He made numerous inspections of the roof and received all reports of plaintiff's technical consultants.
By the unambiguous words of the statute, there was no requirement that the witness be an expert in order to testify as to value. Alabama Power Co. v. Allen, 218 Ala. 416,118 So. 662 (1928). The exclusion of the proffered testimony clearly worked an injury to plaintiff's cause, and is therefore subject to our review and grounds for reversal. See, Blount County v.Campbell, 268 Ala. 548, 109 So.2d 678 (1959).
Considering the above in the totality of its effect, we conclude plaintiff is correct in its assertions on these evidentiary matters. It is within the province of the jury to ascertain the amount of damages, Alabama Power Co. v. Thompson,250 Ala. 7, 32 So.2d 795 (1947), and the excluded testimony and documents were admissible as an aid in arriving at their true measure. Arrick v. Fanning, 35 Ala. App. 409, 47 So.2d 708
(1950). See also, Walker Manufacturing Co. v. HenkelConstruction Co., 346 F. Supp. 621 (N.D.Iowa 1972).
 II
As indicated, plaintiff was also erroneously denied the opportunity to put on proof as to the causes of the roof's failure. We now turn to the effects of this error on plaintiff's case against the other defendants, and while so doing, consider the propriety of the directed verdicts on legal as opposed to evidentiary grounds.
A. JOHNS-MANVILLE
Plaintiff contends the trial court erred to reversal in granting defendant Johns-Manville's *Page 723 
motion for a directed verdict. Specifically, plaintiff maintains that it was entitled to assert and prove its right to recover under Alabama's Extended Manufacturers Liability Doctrine. We agree.
In a case such as this, under Alabama's "Extended" doctrine, a plaintiff must plead and prove, among other things: (1) he sustained damage to his property, (2) caused by a product, (3) sold in a defective condition, and (4) that the product was expected to and reached him without substantial change from the condition in which it was sold. Atkins v. American MotorsCorp., Ala., 335 So.2d 134 (1976).
An action under Alabama's "Extended" doctrine must be brought within one year of the time the cause of action accrues. §6-2-39, Code of Ala. 1975.
Our cases hold that the one year statute begins to run at the time plaintiff first suffers legal injury. Home Ins. Co. v.Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468 (1973).
It is settled that where the facts are disputed on the question of when plaintiff first suffered injury, the issue of whether the statute of limitations bars plaintiff's claim is for the jury. Turner v. County Board of Education of DaleCounty, Ala., 360 So.2d 948 (1978). See also, 13A Ala. DigestLimitation of Actions 199.
In the instant case, defendant Johns-Manville contends it was entitled to a directed verdict on the "Extended" claim because the facts show plaintiff's injury occurred prior to one year preceding the filing of plaintiff's suit. The record reveals, however, that plaintiff presented more than a scintilla of evidence that the legal injury could have occurred in the winter of 1976, six months prior to the time it instituted this action. Thus, despite defendant's assertion of facts to the contrary, the issue was properly for the jury and for this reason, the trial court erred in granting Johns-Manville's motion for directed verdict.
Aside from the limitations question, Johns-Manville additionally argues that the directed verdict was proper on the "Extended" claim because plaintiff's proof totally failed to establish that its product was defective or that plaintiff suffered damages.
Our observations elsewhere in this opinion with respect to the trial court's impermissible exclusion of expert testimony on the issue of damages apply equally as well to the exclusion of opinion testimony on the issue of whether this defendant's product was defective. In particular, we note that the testimony of plaintiff's experts, Cash and Adler, was excluded as to the quality of the materials, whether the materials in the roof were defective, and the reasons for the failure of the roof, all of which is crucial to the determination of this defendant's liability to plaintiff under the "Extended" doctrine.
Because of the improper exclusion of this testimony, plaintiff was precluded from proving its case and thus there was error in directing a verdict in favor of defendant Johns-Manville.
B. INTERSTATE
Plaintiff asserted two alternative theories of recovery against Interstate as roofing subcontractor, i.e., breach of contract and negligence.
As to its theory of recovery under contract, plaintiff, notwithstanding the absence of an express agreement with Interstate, sought to prove that Interstate's contract with Universal was made for its benefit and, that as a third party beneficiary, it was entitled to recover from Interstate. We are in agreement with the learned trial judge that, under the law of Alabama, and on the basis of the contract documents between plaintiff, Universal and Interstate, no third party cause of action could be maintained by plaintiff in this case.
It is well settled in Alabama that a third person has no rights under a contract between others unless the contracting parties intend that the third person receive direct benefit
enforceable in court as opposed *Page 724 
to an incidental benefit. Wood Chevrolet Co., Inc. v. Bank ofthe Southeast, Ala., 352 So.2d 1350 (1977).
As a general rule, it is appropriate for a court to examine the contract documents as well as the surrounding circumstances in resolving the question of whether the parties intended to directly benefit a third party. See Riegel Fiber Corp. v.Anderson Gin Co., 512 F.2d 784 (5th Cir. 1975).
Where, however, two contracting parties expressly provide that a third party shall have no legally enforceable rights in their agreement, a court must effectuate the expressed intent by denying the third party any direct remedy. E.C. Ernst, Inc.v. Manhattan Construction Co. of Texas, 551 F.2d 1026 (5th Cir. 1977), cert. denied, Providence Hospital v. ManhattanConstruction Co. of Texas, 434 U.S. 1067, 98 S.Ct. 1246,55 L.Ed.2d 769 (1978).
In the instant contract between plaintiff and Universal, the agreement provided:
 Nothing contained in the contract documents shall create any contractual relation between any subcontractors and the owners. General Conditions of the Contract for Construction, Article 36, entitled Subcontractors, p. 16.
Furthermore, the agreement between Interstate and Universal incorporated the above noted condition as well as all other provisions of the Federal Mogul-Universal contract. Because the language of the instant documents expressly pre-empts the creation of third party contract rights in Federal Mogul, this court effectuates that expressed intent, and consequently, we find no error with the trial court's directed verdict to Interstate under this theory of recovery. E.C. Ernst, supra.
As to its negligence theory of recovery, plaintiff contends the trial court erred to reversal in directing a verdict in favor of Interstate because, had the trial court not improperly excluded plaintiff's proof of damages, the issue would have gone to the jury. We agree.
As a matter of law, plaintiff's theory of recovery against Interstate was properly cognizable in the trial court. Our cases hold that, where the charge of negligence is based upon breach of duty arising out of a contractual relationship, no cause of action arises in favor of one not in privity to the contract. However, there are exceptions, such as where there is an invasion of a duty independent or concurrent with the contract. Weston v. National Mfrs. Stores Corp., 253 Ala. 503, 45 So.2d 459 (1950).
Stated alternatively, defendant's duty may arise from a social relationship as well as from a contractual relationship.Williams v. Jackson Co., Ala.Civ.App., 359 So.2d 798, cert.denied, 359 So.2d 801 (Ala. 1978).
Although plaintiff may be barred from recovering from defendant as a third party beneficiary to defendant's contract with another, plaintiff may nevertheless recover in negligence for defendant's breach of duty where defendant negligently performs his contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable. Williams v. Jackson Co., supra. See also, Zeiglerv. Blount Bros. Construction Co., Ala., 364 So.2d 1163 (1978).
In the instant case, notwithstanding the lack of privity between plaintiff and Interstate, there is no question that defendant knew or should have known plaintiff was reasonably relying on defendant's proper performance of its roofing contract with Universal. Furthermore, damage resulting from improper performance was clearly foreseeable. As a matter of law, then, plaintiff was entitled to assert this theory and prove its damages.
In this regard, defendant-Interstate maintains that the directed verdict was proper because plaintiff failed to prove his damages. As we noted above, plaintiff's proof on this issue was improperly excluded, and thus, the directed verdict was improperly granted.
Although Interstate does not raise the point, we would be remiss if we did not note there is also a one year statute of *Page 725 
limitations for negligence actions. § 6-2-39, Code of Ala. 1975. As the record is not clear as to whether the trial court considered the statute to have run in granting the directed verdict for Interstate, we refer to our discussion of this question in our treatment of Johns-Manville where we held this issue was properly for the jury.
C. WILEY AND WILSON
Plaintiff additionally contends that the trial court erred in granting defendants Wiley and Wilson's motion for a directed verdict. Plaintiff argues this is so because the evidence adduced at trial shows that these architects breached their implied warranty to plaintiff that their plans and specifications for the project were sufficient to prevent water leakage.
Wiley and Wilson, on the other hand, contend that in Alabama there is no recognized implied warranty by architects that plans and specifications are fit for a particular purpose. These defendants further maintain that even assuming arguendo
that such a theory is legally cognizable, plaintiff failed to produce a scintilla of evidence with respect to faulty engineering or architectural design in either the plans or the specifications for the roof.
Contrary to Wiley and Wilson's assertion, it appears to be the law of Alabama that, under the proper circumstances, an architect impliedly warrants that his plans and specifications for the construction of a building are sufficient to make the structure reasonably fit for its intended purpose. UnitedStates Fidelity Guaranty Co. v. Jacksonville StateUniversity, Ala., 357 So.2d 952 (1978). In that case, the university, as owner of a dormitory, successfully brought an action against the architect, among others, for breach of contract and for breach of an implied warranty that its plans and specifications were sufficient to prevent water leakage. Our supreme court affirmed the trial court's award of damages against the architect and further affirmed that court's apportionment of damages between the architect and the prime contractor. Although Wiley and Wilson, in a well reasoned brief, highlight a number of features in USFG, supra, which in their opinion support the conclusion that Alabama has not adopted the theory, to this court, the import of the supreme court's decision appears to be that under certain circumstances, architects may be found liable on a theory of implied warranty.
Aside from the sufficiency of this theory as a matter of law, however, we are of the opinion that a directed verdict in favor of Wiley and Wilson was proper in this instance because the record is devoid of a scintilla of proof that the architects' plans were defective.
The record reveals that plaintiff's counsel sought to elicit testimony from witnesses Cash, Adler and Romeo which was not intended to and did not relate in any way to the sufficiency of Wiley and Wilson's designs or their architectural soundness, nor is it contended on appeal that such testimony was improperly excluded. Put another way, plaintiff's counsel informed the trial judge that the testimony of these witnesses was not offered for the purpose of establishing that the architects' drawings and specifications were faulty but that such testimony was offered to prove, among other things, defective installation, defective product, and damages. Given the plaintiff's failure of proof in the presentation of this issue, we hold the trial court properly directed a verdict in favor of this defendant.
 III
In summary, we hold that, as to defendant Universal, the trial court impermissibly denied plaintiff the opportunity to prove its damages. Plaintiff's witnesses Cash and Adler should have been qualified as experts competent to give opinion testimony as to the extent to which the roof failed, the causes therefor (including their opinions as to defective product and defective installation), and as to the necessary plans and specifications required to remedy the deficiencies in the structure. Witness Romeo should have been allowed to give evidence *Page 726 
as to the present value of the roof, and the contract entered into pursuant to the architectural plans.
With regard to the directed verdicts in favor of defendants Interstate and Johns-Manville, as noted above, these verdicts should not have been entered on the basis that plaintiff failed to prove damages. Additionally, and as to defendant Johns-Manville, a verdict should not have been granted for the reason that plaintiff failed to prove this defendant's product was defective inasmuch as proof of this issue was likewise impermissibly excluded.
In view of the reversible errors in this case, we have no alternative but to remand the entire matter back to the trial court for proceedings consistent with this opinion.
We would specifically note that further proceedings in the trial court are not limited to the question of the amount of damages alone.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P.J., and BRADLEY, J., concur.