470 So.2d 1226 (1985)
Lamar MILLS, Willie R. Allen, Donice Anderson and James Anderson
v.
R.D. WELK, Randolph Johnston, W.R. Rayfield, and Milford "Pat" Patterson.
83-894.
Supreme Court of Alabama.
May 10, 1985.
*1227 Larry C. Jarrell of Crawley & Jarrell, Troy, for appellants.
Robert D. Segall of Copeland, Franco, Screws & Gill, Montgomery, for appellees.
ADAMS, Justice.
This is an appeal from the Coffee County Circuit Court's order dismissing the individual defendants from an action filed against them and their employer, Wayne Poultry. PlaintiffsLamar Mills, Willie Allen, and James and Donice Andersonallege that the individual defendantsR.D. Welk, Randolph Johnston, W.R. Rayfield, and Milford Pattersonbreached their oral employment-at-will contracts with Wayne Poultry, and as a result damaged plaintiffs' operations. We affirm.
The facts of this case are as follows:
Defendant Wayne Poultry is a foreign corporation in the business of raising and selling chickens. To this end, Wayne Poultry employs several "contract growers" who actually raise the chickens for it. Four such contract growers of Wayne Poultry were these four plaintiffs. As part of the arrangement, each of the plaintiffs would receive a flock of "broilers" from Wayne Poultry, raise them, and sell the mature chickens back to Wayne Poultry. A written broiler feeding agreement, setting out the specific terms of the agreement between the parties, was executed for each flock of broilers delivered to a grower by Wayne Poultry. In each contract there was a clause which read: "[T]his Agreement represents the complete understanding between the parties and any variation from the terms hereof must be authorized by further written agreement signed by both parties hereto." The other details, such as the number of chicks and price per pound, varied from contract to contract, but the above-mentioned clause was included in each.
As part of the overall agreement between Wayne Poultry and the contract growers, Wayne Poultry hired defendants Randolph Johnston and Milford Patterson as servicemen to assist the growers and work with them in an attempt to realize the maximum profit for the minimum outlay. Wayne Poultry also reserved the right to inspect the growers' operations at any time to ensure that they were properly performing their responsibilities.
These servicemen would maintain daily contact with the growers and make suggestions concerning any changes or improvements that should be made to comply with Wayne Poultry's standards. Their job was to aid the contract growers in their attempts to raise quality chickens at the lowest possible cost to Wayne Poultry. They were full-time employees-at-will of Wayne Poultry. Neither had written contracts with Wayne Poultry.
*1228 The other two individual defendants, W.R. Rayfield and R.D. Welk, were not servicemen. Rayfield was the head of Wayne Poultry's grow-out division. He did not come in contact with the contract growers often, but mainly supervised the servicemen to see that they carried out the directives of Wayne Poultry. Welk was a complex manager. One of his numerous responsibilities was to supervise Rayfield. Welk's contact with the contract growers was minimal. Both Rayfield and Welk were full-time employees-at-will of Wayne Poultry.
In their complaint, plaintiffs alleged that part of the overall agreement they had with Wayne Poultry was that so long as they raised quality chickens, Wayne Poultry would continue to provide them with flocks of broilers. Also, plaintiffs alleged that it was the individual defendants' job to see to it that the chickens which were raised were of good quality and acceptable to Wayne Poultry.
When Wayne Poultry stopped providing flocks of broilers to each of the plaintiffs, they filed suit in the Circuit Court of Coffee County against Wayne Poultry and the individuals they claimed were responsible for their loss of business. Plaintiffs based their action on the theory that they were third-party beneficiaries of oral employment-at-will contracts between the individual defendants and Wayne Poultry, and that the individual defendants breached their contracts with Wayne Poultry to supervise and aid the plaintiffs in the growing of chickens, thus causing Wayne Poultry to terminate them, leaving them with an investment in thousands of dollars worth of equipment which they could no longer use. Each of the plaintiffs sought $100,000.00 in damages from Wayne Poultry and $100,000.00 in damages from the individual defendants.
On May 6, 1983, defendants filed a petition for removal to federal court based upon diversity of citizenship and the fraudulent joinder of the individual defendants. On December 1, 1983, plaintiffs' motion to remand the case to the circuit court was granted by the United States district court. The state trial court then granted the individual defendants' motion to dismiss due to the plaintiffs' failure to state a cause of action upon which relief could be granted against them. Defendant Wayne Poultry again petitioned for removal to the U.S. district court, and again the district court remanded the case, because the individual defendants were dismissed involuntarily and, therefore, plaintiffs had to appeal the dismissal to this Court before the case would be in a posture to be removed.
The single issue for our review is whether the trial court was correct when it dismissed the individual defendants from the action due to plaintiffs' failure to state a cause of action upon which relief could be granted against them. Rule 12(b)(6), A.R. Civ.P. We are of the opinion that the trial court was correct and, therefore, that its judgment is due to be affirmed.
Plaintiffs based their claim for damages on the theory that they were third-party beneficiaries of the oral employment-at-will contracts entered into between the individual defendants and Wayne Poultry. For the reasons that follow, we are of the opinion that this theory of recovery must fail.
First, it has long been the rule in Alabama that one who seeks recovery as a third-party beneficiary of a contract must establish that the contract was intended for his direct, as opposed to incidental, benefit. Anderson v. Howard Hall Co., 278 Ala. 491, 179 So.2d 71 (1965). This position was reaffirmed in the more recent decision of Zeigler v. Blount Brothers Construction Co., 364 So.2d 1163 (Ala.1978). In the case sub judice we look to the pleadings, as we did in Zeigler, to see that the benefit to the plaintiffs was not intended to be a direct benefit, but rather was merely an incidental benefit.
Wayne Poultry reserved the right to inspect the flocks and chicken houses at any time to ensure that it got the best results from the growers. Wayne Poultry was interested in making as large a profit as was possible, and it was for this reason that the individual defendants were employed. *1229 It is not difficult to envision a situation arising wherein the individual defendants would recommend a certain procedure or equipment change which the growers may perceive to be too great a financial outlay, but which would cause a greater yield for Wayne Poultry. It is true that because of the servicemen's advice, the growers have the possibility of receiving better compensation for raising better chickens, and in this regard any improvements or suggestions made by the servicemen could benefit the growers, but again, this is only incidental to the direct benefit which flows to Wayne Poultry.
The Court of Civil Appeals addressed the third-party beneficiary issue in Federal Mogul Corporation v. Universal Construction Co., 376 So.2d 716 (Ala.Civ.App.), cert. denied, 376 So.2d 726 (Ala.1979), stating:
Where, however, two contracting parties expressly provide that a third party shall have no legally enforceable rights in their agreement, a court must effectuate the expressed intent by denying the third party any direct remedy. E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas, 551 F.2d 1026 (5th Cir. 1977), cert. denied, Providence Hospital v. Manhattan Construction Co. of Texas, 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978).
376 So.2d at 724. In the case before us, there is no express language to this effect in the contracts between Wayne Poultry and the individual defendants. However, an attempt to reach the same result by Wayne Poultry can be discerned from the language found in the broiler feeding agreement, which states that "this Agreement represents the complete understanding between the parties and any variation from the terms hereof must be authorized by further written agreement signed by both parties hereto." There is nothing in these broiler feeding agreements that even suggests that the contract growers have any right to enforce the oral employment-at-will contracts between Wayne Poultry and the individual defendants.
Under the allegations of the complaint, we are of the opinion that plaintiffs have failed to suggest how they were intended to receive direct, rather than incidental, benefit as a result of the employee-at-will contracts between the individual defendants and Wayne Poultry. Because they failed to do so, the trial court was correct in dismissing the individual defendants from the action. The judgment of the trial court is affirmed.
AFFIRMED.
FAULKNER, ALMON and EMBRY, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
I agree that dismissal was appropriate. In reaching this conclusion, I do not rely on the existence of an integration clause in the broiler feeding agreements.
The parties to the broiler feeding agreements are Wayne Poultry and the plaintiffs. The integration clause is an expression of the understanding of those parties that that written agreement is complete and is not to be varied by parol evidence. See, Commercial Credit Co. v. Seale, 30 Ala.App. 440, 8 So.2d 199 (1942); 4 S. Williston, A Treatise on the Law of Contracts § 633 (3d ed. 1961). I do not believe that the integration clause in the agreement between Wayne Poultry and the plaintiffs in any way indicates whether the agreement between Wayne Poultry and the defendants was intended to directly benefit the plaintiffs.